UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                       :

EMANUEL M. BROOKS,                   :
                                         :

                          Plaintiff,     :         11 Civ. 6627 (JMF)
                                         :

         -v-                          :        OPINION AND ORDER
                                       :

CORRECTION OFFICER K. JACKSON, et al.,   :
                                       :

                        Defendants.   :
                                         :
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/23/2013

JESSE M. FURMAN, United States District Judge:

      Plaintiff Emanuel M. Brooks, a state prisoner proceeding *pro se*, brings this action

pursuant to Title 42, United States Code, Section 1983, claiming violations of his constitutional

rights during his incarceration at Sing Sing Correctional Facility ("Sing Sing") and Attica

Correctional Facility ("Attica").  He also brings a claim pursuant to the Religious Land Use and

Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*  Brooks sues

Correctional Officers K. Jackson, M. Darden (incorrectly identified as "Darken" in the Amended

Complaint), D. McCurdy, and B. Carver — all current and former employees of the New York

State Department of Correctional Services ("DOCS") — in their individual and official

capacities.[1]  He also names DOCS as a defendant in his opposition papers.  (Opp'n 15 (Docket

No. 56)).  Defendants move to dismiss the Complaint in its entirety pursuant to Rules 12(b)(1)

and 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons discussed below,

Defendants' motion is GRANTED in part and DENIED in part.

---

[1]     Brooks also names Correctional Officer Tomson as a Defendant in the Amended
Complaint, but there is no record that he has served Tomson.

## BACKGROUND

Although Brooks is presently incarcerated at Clinton Correctional Facility, his allegations relate to his previous incarceration at Sing Sing and Attica.  In particular, most concern an alleged incident with Officer Jackson at Sing Sing on or about April 17, 2009.[2]  According to Brooks, Officer Jackson questioned him in the C Gallery of Building 5 as to what he had in his pants.  She also told him to lift his pant-legs and open the crotch area of his pants, and conducted two pat-and-frisks on him — at least one of which (and perhaps both of which, as the record is not clear) occurred after he had informed her that he was Muslim and preferred to be searched by a male officer.  (Am. Compl. § II.A (Docket No. 24); Opp'n 9).  Brooks alleges that Officer Jackson later called him to her office, ordered him against the wall, and sexually and physically abused him.  (Opp'n 9-10; Am. Compl. § II.A).  Specifically, Brooks alleges that Officer Jackson hit him in his groin, grabbed and pulled his genitals, and put her finger in his anus. (Am. Compl. § III).  After Brooks asked Officer Jackson for her name, Brooks claims that she told him not to tell anyone about the incident and threatened to "get" him if he reported her. (Opp'n 10).  Nevertheless, he returned to his cell and filed a grievance against her.  (*Id.*)

Brooks claims that, later the same day, in retaliation for the grievance he had filed against Officer Jackson, three officers — Defendant Officers McCurdy and Darden, as well as another unidentified individual — assaulted, threatened, and harassed him.  (Am. Compl. § II.C-D; Opp'n 12).  Brooks claims that this incident caused him physical and emotional injuries, including two lumps on his back and chronic pain in his upper and lower back and neck.  (*Id.* § III).  He further alleges that he did not receive adequate medical attention for this incident or

---

[2]     At one point in his original Complaint, Brooks identifies the date as May 17, 2009. (Compl. § III (Docket No. 2)).

for the incident with Officer Jackson.  (*Id.* § II.D).  He also asserts that he has not received adequate mental health care at Attica.  (Am. Compl. § V).

On or about April 23, 2009, Officer Jackson filed a misbehavior report against Brooks, alleging that Brooks stared at Officer Jackson through a mirror, exposed himself, and masturbated.  (Opp'n 11, 33-36).  Brooks contends that this incident never took place and that the misbehavior report defamed his character.  (*Id.*at 11; Am. Compl. § II.D).  A disciplinary hearing stemming from the allegations contained in the report was held on May 19, 2009. (Opp'n 33).  Brooks alleges that at that hearing, Hearing Officer Carver violated his due process rights.  (Opp'n 13, 33-35).   In particular, he states that Officer Carver denied him the opportunity to call witnesses, failed to conduct an adequate mental health capacity assessment, and did not hold the hearing within fourteen days of the filing of the misbehavior report as required.  (*Id.*).  As a result of the hearing, Brooks was placed in keeplock, where he was allegedly held in an unsanitary cell and denied food and showers.  (Am. Compl. § II.D; Opp'n 14).  Brooks also claims that on an unspecified date, some of his personal property, including books, family pictures, and letters, was destroyed.  (Am. Compl. § II.D).  Finally, Brooks claims that Officers Carver and Jackson conspired to retaliate and discriminate against him.  (*Id.* § II.D).

Brooks seeks $5,000,000 in damages to compensate for his physical and emotional injuries.  (*Id.* § V).  He also seeks to be transferred to Sing Sing to receive certain unspecified mental health treatment.  (*Id.*).

## STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *See, e.g.*, *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009).  To survive a Rule 12(b)(6) motion, however, the plaintiff must plead sufficient facts "to state a claim to relief

that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Further, if the plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

Plaintiff here is proceeding *pro se*.  Accordingly, his submission must be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks omitted); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (stating that a court must "construe a *pro se* complaint liberally").  Nevertheless, *pro se* plaintiffs are not excused from the normal rules of pleading, and "dismissal under Rule 12(b)(6) is proper if the complaint lacks an allegation regarding an element necessary to obtain relief." *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotation marks and alteration omitted).  In other words, the "'duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it.'" *Id.* (alteration in original) (internal quotation marks omitted).

Generally, in considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), courts are limited to the facts alleged in the complaint and are required to accept these facts as true.  *See, e.g.*, *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009); *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662 (2d Cir. 1996) .  A court may, however, consider documents attached to the complaint, statements or documents

4

incorporated into the complaint by reference, matters of which judicial notice may be taken,

public records, and documents that the plaintiff either possessed or knew about, and relied upon,

in bringing the suit. *See, e.g.*, *Kleinman v. Elan Corp., plc*, 706 F.3d 145, 152 (2d Cir. 2013); *see

also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (applying rule to district

courts). In addition, because a *pro se* plaintiff's allegations must be construed liberally, it is

appropriate for a court to consider factual allegations made in a *pro se* plaintiff's opposition

memorandum, as long as the allegations are consistent with the complaint. *See, e.g.*, *Braxton v.

Nichols*, No. 08 Civ. 08568 (PGG), 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010); *cf. Gill

v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (considering a *pro se* plaintiff's affidavit in

opposition to a motion to dismiss in addition to those in the complaint).

## DISCUSSION

Liberally construed, Brooks's Amended Complaint includes a veritable potpourri of

claims against different combinations of Defendants, including claims under the Eighth

Amendment, a claim of First Amendment retaliation, due process claims, defamation and

defamation-type claims, conspiracy claims, and religious free exercise claims under both the

First Amendment and RLUIPA. The moving Defendants (that is, all Defendants other than

Officer Tomson, who has not appeared in this action) contend that each claim fails as a matter of

law.[3] The Court will address each set of claims in turn.

---

[3] Defendants also argue that Brooks's claims should be dismissed for failure to exhaust
administrative remedies. (Mem. Law Supp. Defs.' Mot. Dismiss Am. Compl. 5-7 (Docket No.
45); Hale Decl. ¶¶ 7-8 & Ex.A (Docket No. 46)). The failure to exhaust is an affirmative
defense, however, which may be raised on a motion to dismiss only where the defense "appears
on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir.
1998). Because it is not clear from the face of Brooks's Amended Complaint that he failed to
exhaust his administrative remedies, and because Brooks plausibly alleges that at least some
Defendants — namely, Officers Jackson, McCurdy, and Darden — engaged in conduct that may
estop them from raising the defense of nonexhaustion, *see Hemphill v. New York*, 380 F.3d 680,
686 (2d Cir. 2004) (holding defendants may be estopped from arguing non-exhaustion when

## A.  Eleventh Amendment Immunity

As an initial matter, Brooks has sued all individual Defendants in both their official and individual capacities, seeking both injunctive relief and monetary damages.  (Am. Compl. 1, § V).  He also names DOCS as a defendant in his opposition papers.  (Opp'n 15).  It is well established that, absent abrogation by Congress, a state is immune from suit in federal court.  *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54-56 (1996).  This sovereign immunity extends to "arms of the state," including agencies such as DOCS.  *Morgan v. N.Y.S. Atty. Gen. Office*, No. 11 Civ. 9389(PKC), 2013 WL 491525, at *11 (S.D.N.Y. Feb. 8, 2013); *see also Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70 (1989).  Congress has not abrogated states' sovereign immunity with respect to claims brought under Section 1983, *see Quern v. Jordan*, 440 U.S. 332, 340–42 (1979), nor has it done so with respect to claims brought under RLUIPA, *see Sossamon v. Texas*, 131 S.Ct. 1651, 1658 (2011).  Further, a state officer may not be sued for damages in his official capacity under Section 1983 because he is not considered a "person" within the meaning of the statute.  *See Reynolds v. Barrett*, 685 F.3d 193, 204 (2d Cir. 2012); *see also Koehl v. Dalsheim*, 85 F.3d 86, 88-89 (2d Cir. 1996) (holding that a Section 1983 suit for money damages against a state official in his official capacity was barred by sovereign immunity).  Thus, Brooks's claims against DOCS and his claims seeking monetary damages against the individual Defendants in their official capacities are dismissed with prejudice.

## B.  Eighth Amendment Claims

Section 1983 provides a civil cause of action against a person who, acting under the color of state law, deprives another person of any of the rights, privileges, or immunities secured by

---

"[their] own actions inhibit[] the inmate's exhaustion of remedies"), the Court concludes that dismissal on this basis is not warranted at this stage.  As discussed below, however, the Court converts Defendants' motion to dismiss for failure to exhaust to a motion for summary judgment with respect to the due process claim asserted against Officer Carver, and dismisses that one claim under the summary judgment standard.

the Constitution or laws of the United States.  *See* 42 U.S.C. § 1983; *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).  Brooks's Amended Complaint, liberally construed, suggests four possible violations by Defendants of the Eighth Amendment's prohibition on cruel and unusual punishment.  First, Brooks claims that, on or about April 17, 2009, Officer Jackson sexually and physically abused him during a pat-and-frisk.  (Am. Compl. §§ II.A, III).  Second, Brooks contends that, shortly thereafter, Officers McCurdy and Darden physically assaulted him.  (Am. Compl. § II.C).  Third, Brooks's papers suggest an Eighth Amendment violation based on the alleged conditions of his confinement while he was in keeplock.  (Am. Compl. § II.D; Opp'n 14).  Fourth, Brooks alleges that he did not receive adequate medical attention for the injuries he sustained from the assaults by Officers Jackson, McCurdy, and Darden, and that he has failed to receive adequate mental health treatment (Am. Compl. §§ II.D, III; Opp'n 11).

In order to successfully make out any Eighth Amendment claim, a prisoner must satisfy a two-part test, composed of an objective and subjective element.  *See, e.g.*, *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012).  Objectively, the conduct at issue, evaluated "in light of contemporary standards of decency," *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (internal quotation marks omitted), must be "sufficiently serious . . . to reach constitutional dimensions," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (internal quotation marks omitted).  The subjective element requires the prison official accused of violating the Eighth Amendment to have possessed a "wanton state of mind" in carrying out the conduct at issue. *Branham v. Meachum*, 77 F.3d 626, 630 (2d Cir. 1996) (internal quotation marks omitted).

### 1.  The Pat-and-Frisk Incident with Officer Jackson

Brooks alleges that, on April 17, 2009, Officer Jackson hit him in his groin, grabbed and pulled his genitals, and put her finger in his anus, resulting in severe pain to his groin, as well as emotional injuries.  (Am. Compl. § III).  Liberally construed, these allegations raise an Eighth

Amendment claim based on excessive force, where the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (internal quotation marks omitted); *accord Wright*, 554 F.3d at 268.  Here, there is no indication that Officer Jackson's alleged use of force was for disciplinary purposes; Brooks alleges that she assaulted him for no particular reason.  Such claims, if true, could indeed constitute a malicious and sadistic use of force, which would satisfy both the objective and subjective elements of the test.  *See, e.g.*, *Wright*, 554 F.3d at 268-69 ("[W]hen prison officials use force to cause harm maliciously and sadistically, contemporary standards of decency always are violated." (internal quotation marks omitted)); *Sims v. Artuz*, 230 F.3d 14, 21-22 (2d Cir. 2000) ("The malicious use of force to cause harm constitutes an Eighth Amendment violation *per se*." (brackets omitted)).  Additionally, because Brooks alleges physical as well as emotional injury from this assault, he would be entitled to recover compensatory damages for both types of injury.  *See Thompson v. Carter*, 284 F.3d 411, 417 (2d Cir. 2002) (holding that 42 U.S.C. § 1997e(e), which, in certain circumstances, bars prisoners from recovering from mental or emotional injuries, does not apply where there is a "showing of actual physical injury").  Defendants' motion to dismiss is therefore denied with regard to Officer Jackson's alleged assault.

### 2.  The Assault by Officers McCurdy and Darden

Brooks alleges that, later the same day, Officers McCurdy, Darden, and another unidentified individual assaulted him.  (Am. Compl. § II.C; Opp'n 12).  In particular, he alleges that Officer Darden first came to his cell and began to verbally harass him.  (Opp'n 12.)  He states that two more officers, including Officer McCurdy, then came to his cell and joined in the verbal harassment.  (*Id.*)  Brooks alleges that afterwards, while he was being escorted to the prison's mental health facility, the three officers who had been verbally harassing him

approached him and punched him in the back of his head, neck, and back, while the officer who was escorting him walked away.  (*Id.*)  As a result of this assault, Brooks alleges, he developed permanent lumps on, and severe pain in, his back and neck.  (Am. Compl. § III).

These allegations also state an Eighth Amendment claim for excessive force.  As discussed above, Eighth Amendment claims based on the excessive use of force turn on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Wilkins*, 559 U.S. at 37 (internal quotation marks omitted).   As with the alleged incident with Officer Brooks, there is no indication that Officers Darden and McCurdy were using force for any disciplinary purposes; according to Brooks, they did so in response to Brooks "fucking with C.O. Jackson."  (Opp'n 12).   Brooks has pleaded sufficient facts to state a claim of use of excessive force by Officers McCurdy and Darden, and Defendants' motion to dismiss this claim is therefore also denied.  Again, if proved true, Brooks would be entitled to recover for both his physical and emotional injuries stemming from this incident.  *See Thompson*, 284 F.3d at 417.

### 3.  Conditions of Confinement

Next, Brooks alleges that, while in keeplock, he was denied food trays, showers, and medical attention (Am. Compl. § II.D), and was placed in a cell without a mattress, with a clogged toilet and sink, with a light bulb that blinked on and off, and with urine, feces, and blood on the floor.  (Opp'n 14).  As with any other Eighth Amendment claim, a conditions-of-confinement claim requires the prisoner to satisfy the objective and subjective prongs of the two-part test.  In the conditions-of-confinement context, that means that "(1) objectively, the deprivation the inmate suffered [must have been] sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official [must have] acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate

health or safety." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (alteration and internal quotation marks omitted).

The conditions that Brooks alleges are arguably sufficiently serious to satisfy the objective prong of the Eighth Amendment analysis. *See id.* at 127 (noting that "unsanitary conditions in a prison cell can, in egregious circumstances, rise to the level of cruel and unusual punishment"); *Robles v. Coughlin*, 725 F.3d 12, 15 (2d Cir. 1983) ("[U]nder certain circumstances a substantial deprivation of food may well be recognized as being of constitutional dimension."). Nevertheless, Brooks fails to allege deliberate indifference on the part of any moving Defendant. Deliberate indifference requires the prisoner to allege that the official "knows of and disregards an excessive risk to inmate health or safety." *Phelps v. Kapnolas*, 308 F.3d 180, 185-86 (2d Cir. 2002). The only prison official alleged to have known of Brooks's conditions of confinement, however, is Officer Tomson (Am. Compl. § II.D), and he has not appeared in this action. Accordingly, all of Brooks's Eighth Amendment conditions-of-confinement claims against the moving Defendants are dismissed.

### 4. The Denial of Medical Treatment

Finally, Brooks claims that he did not receive adequate medical attention for the injuries he sustained from the sexual assault by Officer Jackson and the physical assault by Officers McCurdy and Darden. (Am. Compl. § III). Liberally construed, his papers also suggest a claim that he has been denied adequate mental health care treatment. (Am. Compl. § II.D; Opp'n 11).

To establish an Eighth Amendment violation for inadequate medical care, a prisoner must make a showing of "deliberate indifference to his serious medical needs," *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.1994), which also involves a two-part objective and subjective test. The first, objective prong asks (1) whether the prisoner "'was actually deprived of adequate medical care,' keeping in mind that only 'reasonable care' is required," and (2) "'whether the inadequacy

10

in medical care is sufficiently serious' by examining 'how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner.'"  *Sledge v. Fein*, No. 11 Civ. 7450 (PKC), 2013 WL 1288183, at *5 (S.D.N.Y. Mar. 28, 2013) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006)).  The second, subjective prong requires the plaintiff to establish that the defendant acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law."  *Salahuddin*, 467 F.3d at 280.

Here, Brooks's complaint lacks the detail necessary to establish a plausible deliberate indifference claim with respect to either his physical or mental health.  Brooks alleges that he suffered chronic pain in his groin, neck, and back, and that the "[D]epartment of Correction[s] [was] not giving [him] the adequate medical attention [he] need[ed]."  (Am. Comp. § III). Although a prisoner's chronic pain may be sufficiently serious to support an Eighth Amendment claim, *see Brock v. Wright*, 315 F.3d 158, 162-63 (2d Cir. 2003), Brooks fails to allege how the treatment he received was inadequate.  Brooks admits that he was provided pain medication; he merely asserts, without elaboration, that this treatment was insufficient.  (Am. Comp. § III). Such allegations do not give rise to a legal claim.  *See Joyner v. Greiner*, 195 F. Supp. 2d 500, 504 (S.D.N.Y. 2002) ("It is well established that a difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference."); *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ("So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.").  Brooks does not explain why the pain medication he was provided was not satisfactory, what alternate treatment he would have preferred, or how such alternate treatment was necessary.  With respect to the allegedly inadequate mental health care treatment, Brooks's papers are similarly devoid of any details

regarding what mental illness afflicts him or what type of treatment he requires.  His claims

regarding the denial of medical care are thus dismissed against all Defendants.

## C.  First Amendment Retaliation Claim

As noted, Brooks claims that, as a result of his filing a grievance against Officer Jackson

after the alleged sexual assault, Officers McCurdy, Darden, and another unidentified individual

retaliated against him by assaulting, threatening, and harassing him.  (Am. Compl. §§ II.C-D).

He also suggests that Officer Jackson instructed them to do so.  (Opp'n 12-13).  Construed

liberally, these facts are also sufficient to state a First Amendment retaliation claim.

To sustain such a claim, "a prisoner must demonstrate the following: (1) that the speech

or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff,

and (3) that there was a causal connection between the protected speech and the adverse action."

*Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (internal quotation marks omitted).  "The

protected conduct must be 'a substantial or motivating factor for the adverse actions taken by

prison officials.'"  *Key v. Toussaint*, 660 F. Supp. 2d 518, 525 (S.D.N.Y. 2009) (quoting *Bennett*

*v. Goord*, 343 F.3d 133, 137 (2d Cir.2003)).  In light of "the near inevitability of decisions and

actions by prison officials to which prisoners will take exception and the ease with which claims

of retaliation may be fabricated," courts must "examine prisoners' claims of retaliation with

skepticism and particular care."  *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

Consequently, "the plaintiff bears a heightened burden of proof."  *Key*, 660 F. Supp. 2d at 525

(internal quotation marks omitted).

Brooks's allegations satisfy all three elements required for a First Amendment retaliation

claim.  With respect to the first element, it is well established that the filing of a grievance is

constitutionally protected behavior.  *See, e.g., Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir.

1996) ("[R]etaliation against a prisoner for pursuing a grievance violates the right to petition

government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under [Section] 1983.").  With respect to the second element, physical assault plainly constitutes adverse action, as it is "conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights."  *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003); *see, e.g.*, *Varela v. Demmon*, 491 F. Supp. 2d 442, 445, 450 (S.D.N.Y. 2007) (noting the defendants' concession that a prisoner's allegation of assault by correction officers, if true, would meet the adverse action element of a retaliation claim).

Finally, Brooks adequately alleges a nexus between the protected speech and the alleged retaliatory action.  In particular, Brooks claims that "C.O. Darden . . . said she was going to kick my ass threat[en]ing to get me for C.O. K. Jackson" (Opp'n 12), and that "C.O. McC[u]rdy said he was going to fuck me up for fucking with C.O. K. Jackson."  (*Id.*).  He also alleges that Officer Tomson told him that Officer Jackson "inform[ed] her [co]workers to ret[al]iate against me."  (*Id.*).  These allegations (which are consistent with, even if slightly more detailed than, the allegations in the Amended Complaint) are sufficiently specific to survive even the heightened pleading standards for retaliation claims.  Defendants' motion to dismiss the First Amendment retaliation claim against Officers McCurdy, Darden, and Jackson is therefore denied.

## D.  Due Process Claims

Next, Brooks's papers raise two separate claims arising from the Due Process Clause of the Fourteenth Amendment.  First, Brooks claims various procedural defects in his disciplinary hearing of May 19, 2009, including a denial of his right to call witnesses at the hearing, the failure of Officer Carver to conduct an adequate mental health capacity assessment, and the failure of Officer Carver to secure proper authorization to hold the hearing more than fourteen days after the misbehavior report was filed.  (Opp'n 33-36).  Second, Brooks claims that Officers

13

Carver and Jackson destroyed certain items of his personal property, including books, family pictures, and letters.  (Am. Compl § II.D).

"To present a due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process."  *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (brackets and internal quotation marks omitted).  An inmate's liberty interest may be implicated when prison discipline "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id.* (internal quotation marks omitted); *accord Sandin v. Conner*, 515 U.S. 472 (1995).

### 1.   The May 19, 2009 Disciplinary Hearing

First, Brooks alleges that the procedures at the May 19, 2009 hearing, where he was accused of staring at Officer Jackson through his mirror, exposing himself, and masturbating, were constitutionally deficient.  (Opp'n 33-36).  In particular, Brooks contends that Officer Carver denied his request to call a correctional officer who was present at the site of the incident as a witness.  (*Id.* 34).  Brooks was found guilty at this disciplinary hearing and, as a consequence, was sent to keeplock for three months.  (*Id.* 30).  In keeplock, Brooks alleges he was denied food trays, showers, and medical attention (Am. Compl. § II.D), and was placed in a cell without a mattress, with a clogged toilet and sink, with a light bulb that blinked on and off, and with urine, feces, and blood on the floor (Opp'n 14).

This claim is easily dismissed against all Defendants other than Officer Carver.  It is a "prerequisite to an award of damages" under Section 1983 that any constitutional violations be tied to the "personal involvement of defendants in [the] alleged constitutional deprivations." *Spavone v. N.Y. State Dept. of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013) (internal quotation marks omitted).   "[P]ersonal involvement of a . . . defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant . . .

failed to remedy the wrong, (3) the defendant created a policy or custom under which

unconstitutional practices occurred, . . . (4) the defendant was grossly negligent in supervising

subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate

indifference to the rights of inmates." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[4]

Brooks fails to allege that any Defendant other than Officer Carver was personally involved in

the disciplinary hearing in any of these ways.

The Court dismisses the due process claims against Officer Carver as well, but for a

different reason: Brooks failed to exhaust his administrative remedies.  Under the Prison

Litigation Reform Act (the "PLRA"), a prisoner must exhaust his administrative remedies before

he can bring an action with respect to prison conditions.  *See* 42 U.S.C. § 1997e(a); *see also*

*Woodford v. Ngo*, 548 U.S. 81, 93-103 (2006).  In New York State, that means taking advantage

of a three-tiered grievance procedure.  *See, e.g.*, *Bennett v. Wesley*, No. 11 Civ. 8715 (JMF),

2013 WL 1798001, at *4-5 (S.D.N.Y. Apr. 29, 2013).  In order to exhaust administrative

remedies, a prisoner must complete all three tiers, up to and including an appeal to the Central

Office Review Committee (the "CORC").  *See* 7 N.Y.C.R.R. § 701.5; *Bennett*, 2013 WL

1798001, at *4-5.  The inmate must also comply with the agency's deadlines and other

procedural rules.  *See Woodford*, 548 U.S. at 93.

Although it may not be clear from the face of Brooks's Amended Complaint that he

failed to exhaust his administrative remedies with respect to the due process claims against

Officer Carver, the Court exercises its discretion to convert Defendants' motion to dismiss on

this limited issue to a motion for summary judgment pursuant to Rule 56 of the Federal Rules of

---

[4]      Although there is some uncertainty with respect to whether, or to what extent, the *Colon* categories remain good law following the Supreme Court's decision in *Iqbal*, *see, e.g.*, *Zappulla v. Fischer*, No. 11 Civ. 6733 (JMF), 2013 WL 1387033, at *9 (S.D.N.Y. Apr. 5, 2013), the Court need not address that issue in this case.

Civil Procedure, and thus considers materials beyond the scope of the pleadings.  *See e.g.*,

*Williams v. Metro. Det. Ctr.*, 418 F. Supp. 2d 96, 101-02 (E.D.N.Y. 2005); *Rivera v. Pataki*, No.

01 Civ. 5179 (MBM), 2003 WL 21511939, at *5 (S.D.N.Y. July 1, 2003).  Conversion is proper

because Defendants provided Brooks with notice that the Court might treat Defendants' motion

to dismiss as a motion for summary judgment, and informed him that if he did not respond "by

filing sworn affidavits and other papers as required by Rule 56(e)," his "COMPLAINT MAY BE

DISMISSED."  (*See* Docket No. 47).  *See, e.g.*, *Hernandez v. Coffey*, 582 F.3d 303, 308 n.2 (2d

Cir. 2009) (citing cases finding that a Local Rule 12.1 Notice provides sufficient notice to pro se

parties).  Further, Brooks himself submitted evidence outside of the pleadings.  (Opp'n 21-75).

And converting Defendants' motion in this limited way "is likely to facilitate the disposition of

the action" with respect to Officer Carver.  *Stephens v. Bayview Nursing & Rehab. Ctr.*, No. 07

Civ. 596 (JFB) (AKT), 2008 WL 728896, at *2 (E.D.N.Y. Mar. 17, 2008) (internal quotation

marks omitted).  After all, the record makes clear that Officer Carver is entitled to judgment as a

matter of law on the ground that Brooks failed to exhaust his administrative remedies.  *See* Fed.

R. Civ. P 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[5]

     In particular, the record makes clear that Brooks failed to appeal any grievance relating to

his due process claim against Officer Carver to the CORC.  The CORC, for example, has no

record of any appeal by Brooks.  (Hale Decl. ¶¶ 7-8 & Ex.A).  And Brooks himself appears to

---

[5]     The Court notes that, at least in some cases, courts in the Second Circuit have considered
administrative records in the exhaustion context on a motion to dismiss without converting the
motion to one for summary judgment.  *See, e.g.*, *Smart v. Goord*, 441 F. Supp. 2d 631, 637-38
(S.D.N.Y. 2006), *on reconsideration in part,* 04 CIV. 8850 RWS, 2008 WL 591230 (S.D.N.Y.
Mar. 3, 2008); *Abney v. McGinnis,* No. 01 Civ. 8444 (SAS), 2002 WL 1461491, *3-4, 2002 U.S.
Dist. LEXIS 12180, at *6-7 (S.D.N.Y July 2, 2002), *reversed and vacated on other grounds,* 380
F.3d 663 (2d Cir.2004).  Here, however, because Plaintiff was on notice that Defendants' motion
might be converted to one for summary judgment, and because Plaintiff himself submitted
extrinsic materials with his Opposition Memorandum, the Court finds it appropriate to convert
this motion to one for summary judgment, at least for this limited purpose.

concede in his opposition papers that he failed to appeal his grievances to the highest stage.

(Opp'n 18-19).  Brooks does submit a copy of one grievance that appears to reflect an attempt to

appeal to the CORC (Opp'n 52-53), but it did not satisfy the exhaustion requirement for several

reasons.  First, Brooks does not allege, let alone show, that he filed Form #2133, which is

required to properly file an appeal with the CORC.  *See* 7 N.Y.C.R.R. § 701.5(d)(1)(i) ("If the

grievant or any direct party wishes to appeal to the CORC, he or she must complete and sign

Form #2133 and submit it to the grievance clerk within seven calendar days after receipt of the

superintendent's written response to the grievance.").  Second, the date of the appeal was more

than one year after the alleged incident, so it was plainly untimely.  *See id*; *see also* 7 N.Y.C.R.R.

§ 701.5(a)(1), (c)  (setting out time limits in which inmates must file grievances to the lower

tiers).  Third and in any event, the grievance makes no mention of anything regarding Officer

Carver's conduct at the disciplinary hearing.

In short, the record shows that Brooks failed to exhaust his administrative remedies with

respect to his due process claim against Officer Carver.  Additionally, Brooks makes no

allegations, and has submitted no evidence, with respect to Officer Carver that could support any

exception to the administrative exhaustion requirement.  *See supra* n.3; *Bennett*, 2013 WL

1798001, at *6.  Under the PLRA, therefore, Brooks's due process claim against Officer Carver

must be dismissed for failure to exhaust.  *See Bennett*, 2013 WL 1798001, at *5 (converting a

motion to dismiss into a motion for summary judgment and dismissing on the ground that the

plaintiff had failed to appeal to the CORC).

### 2.  The Destruction of Personal Property

As noted, Brooks also alleges that certain of his personal property was destroyed,

including song books, family pictures, letters, books, and legal documents. (Am. Compl. § II.D).

"An unauthorized intentional deprivation of property by a state employee does not constitute a

17

violation of the procedural requirements of the Due Process Clause of the Fourteenth

Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v.*

*Palmer*, 468 U.S. 517, 533 (1984).  The Second Circuit has specifically held that the availability

of an action in the New York Court of Claims constitutes such a remedy.  *See, e.g.*, *Davis v. New*

*York*, 311 F. App'x 397, 401 (2d Cir. 2009); *Love v. Coughlin*, 714 F.2d 207, 209 (2d Cir. 2009);

*see also Jones v. Harris*, 665 F. Supp. 2d 384, 401 (S.D.N.Y. 2009).  As Brooks does not allege

that he is unable to file such an action, Defendants' motion to dismiss this claim is granted.

**E.  Misbehavior Report**

Next, Brooks claims that the misbehavior report filed against him by Officer Jackson on

April 23, 2009, was fabricated.  (Am. Compl. § II.D).  Read liberally, Brooks's papers allege that

by filing this allegedly false report, Officer Jackson violated his constitutional rights and

defamed his character.  Both claims fail as a matter of law.

First, it is well established that "a prison inmate has no general constitutional right to be

free from being falsely accused in a misbehavior report.'"  *Boddie v. Schnieder,* 105 F.3d 857,

862 (2d Cir. 1997); *see Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986).  Thus, the only

way in which the filing of a false misbehavior report can violate a prisoner's constitutional rights

is if the report is filed in retaliation for the exercise of some other constitutional right, such as the

filing of a grievance.  *See Boddie*, 105 F.3d at 862*; see also Gayle v. Gonyea*, 313 F.3d 677, 682

(2d Cir. 2002) ("An allegation that a prison official filed false disciplinary charges in retaliation

for the exercise of a constitutionally protected right, such as the filing of a grievance, states a

claim under § 1983.").  Here, however, Brooks makes no claim that the filing of the misbehavior

report was done in response to his filing of a grievance; in fact, at the disciplinary hearing,

Brooks apparently testified that Jackson fabricated the allegations "for reasons unknown to

[him]."  (Opp'n 33).  Therefore, Brooks's allegation that Officer Jackson filed a false

18

misbehavior report against him is insufficient to state a claim for the violation of his
constitutional rights.

Brooks's defamation claim also falls short.  Generally speaking, state law, not Section
1983, provides the remedy for a defamation claim.  *See, e.g.*, *Lauro v. Charles*, 219 F.3d 202,
207 (2d Cir. 2000).  Federal constitutional relief may be available for defamation under the Due
Process Clause — through what is known as a "stigma plus" claim — when a plaintiff can
demonstrate that the government has (1) made an "utterance of a statement sufficiently
derogatory to injure [the plaintiff's] reputation, that is capable of being proved false, and that
[the plaintiff] claims is false," and (2) imposed a "material . . . burden or . . . alteration of the
plaintiff's status or rights." *Vega v. Lantz*, 596 F.3d 77, 81 (2d Cir. 2010) (internal quotation
marks omitted).  Further, the "statement must be sufficiently public to create or threaten a
stigma." *Velez v. Levy*, 401 F.3d 75, 87 (2d Cir. 2005).  Here, Brooks makes no allegations that
Defendants (or anyone else) publicized the misbehavior report.  It follows that his defamation
claim must be dismissed.

## F.  Conspiracy

Next, Brooks claims that Officers Carver and Jackson conspired together to unlawfully
confine him, violate his mental health patient rights, retaliate against him, and discriminate
against him.  (Am. Compl. § II.D).  To establish a claim for conspiracy under Section 1983,
Brooks must demonstrate "(1) an agreement between two or more state actors . . . (2) to act in
concert to inflict an unconstitutional injury; [and] (3) an overt act done in furtherance of that goal
causing damages." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 507 (S.D.N.Y. 2008) *aff'd
sub nom. Jean-Laurent v. Wilkerson*, 461 F. App'x 18 (2d Cir. 2012).  "Because of the relative
ease with which conspiracy allegations may be brought, and the substantial disruption of
governmental function that they can cause, federal courts require 'more than conclusory

allegations to avoid dismissal of a claim predicated on a conspiracy to deprive [the plaintiff] of his constitutional rights.'" *Nwanze v. Philip Morris Inc.*, 100 F. Supp. 2d 215, 219 (S.D.N.Y. 2000) (alteration in original) (quoting *Polur v. Raffe*, 912 F.2d 52, 56 (2d Cir. 1990)).  To avoid dismissal, therefore, Brooks "must plead facts that show an agreement or some form of joint or concerted action." *Id.* (internal quotation marks omitted).  Brooks must "make an effort to provide some details of time and place and the alleged effect of the conspiracy." *Id.* (internal quotation marks omitted).

Here, Brooks fails to allege any facts that might support an inference that Officers Jackson and Carver conspired to deprive him of his constitutional rights.  Brooks makes only the conclusory allegation that "Carver work[ed] with K. Jackson" to unlawfully confine him, violate his mental health patient rights, destroy his personal property, and retaliate against him, but provides no other details to support his allegation of a conspiracy.  (Am. Compl. § II.D).  As Brooks has not pleaded facts that show an agreement or some form of joint or concerted action, Defendants' motion to dismiss this claim is granted.

## G.  Religious Liberty Claims

Finally, liberally construed, Brooks's papers also allege a violation of his rights under both the Free Exercise Clause of the First Amendment and RLUIPA.  Brooks's papers suggest that he is a follower of the Muslim faith, and that being subjected to a pat-and-frisk by a member of the opposite sex violates his religious beliefs.  (Am. Compl. § II.D; Opp'n 9).  He alleges his rights were violated when Officer Jackson conducted two pat-and-frisks on him, at least one of which (and perhaps both of which) occurred after Brooks had informed her that he was Muslim and preferred to be frisked by an officer of the same sex.  (Am. Compl. § II.D; Opp'n 9).

Brooks's RLUIPA claim is easily dismissed, as the Second Circuit recently held that the statute does not provide a private cause of action against state officials in their individual

20

capacities (at least where, as here, there is no allegation that the officials' purported restriction on religious rights had an effect on interstate or foreign commerce). *See Washington v. Gonyea*, No. 11-980-cv, — F.3d —, 2013 WL 4792375, at *2-3 (2d Cir. Sept. 10, 2013).

At this stage, however, the Court will not dismiss Brooks's Free Exercise claim. To assess a claim under the Free Exercise Clause, a court must determine "(1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological objective." *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988). The first and the third elements are non-issues at this stage of the litigation. As to the first element, Brooks has alleged that he is a Muslim and thus prefers to be searched by male officers; the Court has no basis now to question the sincerity of these beliefs. (Am. Compl. § II.D; Opp'n 9). As to the third element, whether there is some legitimate penological objective served by cross-gender pat-and-frisks (or, more precisely, by not honoring an inmate's religious-based request to be frisked by an officer of the same gender) is not something that can be assessed on the current record.

Whether the allegations in the Amended Complaint are sufficient to satisfy the second element — that is, whether Brooks plausibly alleges that the disputed conduct "substantially burden[ed]" his "sincerely held religious beliefs," *Salahuddin*, 467 F.3d at 274-75 — is a closer issue. Although the case law on point is limited, there is little question that cross-gender pat-and-frisks *can* substantially burden a prisoner's Free Exercise rights. *See, e.g.*, *Forde v. Baird*, 720 F. Supp. 2d 170, 176 (D. Conn. 2009); *Forde v. Zickefoose*, 612 F. Supp. 2d 171, 175-78 (D. Conn. 2009). But the line between what constitutes a substantial burden and what does not — and on which side of that line Brooks's allegations of two pat-and-frisk incidents would fall — is less clear. Given that lack of clarity, and mindful of Plaintiff's *pro se* status, the Court declines

to hold that the allegations in the Amended Complaint fail as a matter of law.  It would be more appropriate to address the issue, if ever, based on a more developed record.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part.  All of Brooks's claims against the moving Defendants (that is, all Defendants other than Officer Tomson) are dismissed except for (1) his Eighth Amendment claim against Officer Jackson in her individual capacity relating to the April 17, 2009 incident; (2) his Eighth Amendment claim against Officers Darden and McCurdy in their individual capacities relating to the alleged assault around that same date; (3) his First Amendment retaliation claim against Officers Jackson, McCurdy, and Darden in their individual capacities; and (4) his First Amendment Free Exercise claim against Officer Jackson in her individual capacity.

As noted, Officer Tomson has not appeared in this action.  Because Officer Tomson was not served within 120 days of the filing of the Complaint, it is hereby ORDERED that Brooks show cause in writing as to why he has failed to serve the summons and Complaint within the 120 days prescribed by Rule 4(m) of the Federal Rules of Civil Procedure or, if Brooks believes that Office Tomson has been served, that he submit a letter to the Court stating when and in what manner such service was made.  If the Court does not receive any communication from Brooks within **thirty days**, showing good cause why such service was not timely made, the Court will dismiss the case against Officer Tomson.

**The Clerk of Court is directed to terminate as parties Officer Carver and all other Defendants to the extent they have been sued in their official capacities, to terminate Docket No. 44,  and to mail a copy of this Memorandum Opinion and Order to Plaintiff.**

This Court certifies, pursuant to Title 28, United States Code, Section 1915(a)(3), that any appeal from this Order would not be taken in good faith, and *in forma pauperis* status is thus denied. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

              SO ORDERED.

Dated:  September 23, 2013
        New York, New York

                                        JESSE M. FURMAN
                                United States District Judge